**NOT FOR PUBLICATION**

$\mathcal{CL}$

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

SHAWN T. HOPPER,

          Plaintiff,

        v.

DETECTIVE RINALDI, et al.,

          Defendants.

Civil Action No.
07-5323 (SRC)

**O P I N I O N**

**APPEARANCES:**

    SHAWN T. HOPPER, Plaintiff pro se
    Passaic County Jail
    Paterson, New Jersey 07501

**Stanley R. Chesler, District Judge**


    Plaintiff SHAWN T. HOPPER (hereinafter "Plaintiff") currently confined at Passaic County Jail, Paterson, New Jersey, seeks to bring this 42 U.S.C. § 1983 action in forma pauperis without prepayment of fees pursuant to 28 U.S.C. § 1915. Plaintiff submitted his affidavit of indigence and institutional account statement pursuant to 28 U.S.C. § 1915(a) (1998). Plaintiff also

    Plaintiff's initial application to prosecute this matter in forma pauperis failed to meet the standard set forth in 28 U.S.C. § 1915 and, consequently, was denied by this Court on December 4,

submitted for filing his complaint (hereinafter "Complaint").

The Complaint, drafted on November 3, 2007, asserts that Plaintiff was unlawfully arrested on May 4, 2007. <u>See</u> Compl. ¶ 6. Specifically, Plaintiff alleges that, at 5 or 6 P.M. on May 4, 2007, two police officers from the City of Clifton's Police Department, Narcotics Division, observed a Honda vehicle driving around a housing project located within the geographic boundaries of the City of Paterson. <u>See</u> <u>id.</u> According to the Complaint, after the Honda vehicle was parked: (a) these police officers observed a controlled substance transaction performed by a person who was in the Honda vehicle; and, after that (b) these police officers saw the Honda vehicle leaving the scene of the transaction <u>en route</u> to Elmwood Park. <u>See</u> <u>id.</u> Consequently, the police officers followed the vehicle and, by the time the vehicle reached Elmwood Park, caught up with it and arrested the person inside, who turned out to be Plaintiff. <u>See</u> <u>id.</u>

While the Complaint expressly concedes that the controlled substance transaction actually took place and was indeed observed by the officers, the Complaint, nonetheless, alleges that Plaintiff arrest was illegal because the officers represented Clifton Police Department, rather than the police department operating in the

2007, causing administrative termination of this matter. On December 27, 2007, Plaintiff cured the deficiencies of his <u>in forma</u> <u>pauperis</u> application, and this Court reopened the case on January 14, 2008.

vicinity of Elmwood Park or Bergen County's Sheriff's Department. See id. (asserting "unlawful arrest out of [the police officer' geographic] jurisdiction," which Plaintiff qualifies as a violation of his Sixth and Fourteenth Amendment rights).


## DISCUSSION

### A.   Standard of Review

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).  Congress's purpose in enacting the PLRA was "primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Tort Claims Act . . . many of which are routinely dismissed as legally frivolous."  Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996).  A crucial part of the congressional plan for curtailing meritless prisoner suits is the requirement, embodied in 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), that a court must dismiss, at the earliest practicable time, any prisoner actions that are frivolous or malicious, fail to state a claim, or seek monetary relief from immune defendants.  However, in determining the sufficiency of a complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court should "accept as true all

of the allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, lend credit to a pro se plaintiff's "bald assertions" or "legal conclusions." Id. Thus, "[a] pro se complaint may be dismissed for failure to state a claim only if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)).

## B.   Plaintiff's Allegations Fail to State a Claim

Although Plaintiff asserts that his Sixth and/or Fourteenth Amendment rights were violated by the arresting police officers, his allegations fail to implicate either the Sixth or the Fourteenth Amendment. Rather, it appears that Plaintiff was attempting to set forth a Fourth Amendment claim. Therefore, this Court will liberally construe the Complaint and analyze Plaintiff's allegations in light of the constraints ensuing from the language of the Fourth Amendment.

Pursuant to the Fourth Amendment, a person has the right to be free from unreasonable searches and seizures and not to have warrants issued against him/her without probable cause. "An arrest made without probable cause creates a cause of action for false

arrest under 42 U.S.C. § 1983.  In addition, where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." O'Connor v. City of Philadelphia, 233 Fed. App. 161, 164 (3d Cir. 2007) (citations and internal quotation marks omitted); compare Luthe v. The City of Cape May, 49 F. Supp. 2d 380, 390 (D.N.J. 1999) ("[A]n arrest based on probable cause can[not] become the source of a claim for false imprisonment") (citation omitted). "An arrest [is deemed] made with probable cause if 'at the moment the arrest was made . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense.  In other words, the constitutional validity of the arrest does not depend on whether the suspect actually committed any crime." Wright, 409 F.3d at 602 (3d Cir. 2005) (citations omitted).

Here, Plaintiff's Complaint makes it abundantly clear that the arresting officers actually operated with probable cause.[2]  See Compl. ¶ 6 (spelling out that the "transaction occurred," and that the officers "observed [that the] trading transaction transpired").

---

[2]

Moreover, the allegations set forth in the Complaint make it clear that the officers were in "hot pursuit," and Plaintiff was attempting to leave the scene of the crime in his vehicle.  See Compl. § 6.  Hence, the circumstances described by Plaintiff unambiguously indicate that the officers had time to neither seek a warrant nor to refer the matter to the local law enforcement officials.

Therefore, Plaintiff's allegations fail to assert a violation of the Fourth Amendment. See O'Connor, 233 Fed. App. at 164. Plaintiff, however, alleges that, presence of probable cause regardless, his arrest was unlawful simply because it was performed by the officers of one municipality within the geographic boundaries of another. See id.

Plaintiff's "arrest outside the officers' jurisdiction" wrinkle does not salvage his claim. The federal courts consistently held that an arrest performed by police officers outside the officers' jurisdiction, especially in exigent circumstances, cannot amount to a claim of constitutional magnitude.

---

3

Federal courts are courts of limited jurisdiction. See Mansfield, C. & L. M. Ry. Co. v. Swan, 111 U.S. 379, 383 (1884). "[T]hey have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." Bender v. Williamsport Area School Dist., 475 U.S. 534, 541 (1986). A district court may exercise original jurisdiction over "Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their authority." U.S. Const. art. III., § 2; see also 28 U.S.C. § 1331.

Section 1983 of Title 42 of the United States Code authorizes a person such as Plaintiff to seek redress for a violation of his federal civil rights by a person who was acting under color of state law. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to

The fact that law enforcement officials acted beyond the scope of their geographic authority may amount to a violation of state law but does not violate the Fourth Amendment. See, e.g., Guest v. Leis, 255 F.3d 325, 334 (6th Cir. 2001) (search and seizure by officers acting outside their jurisdiction did not violate the Fourth Amendment); United States v. Mikulski, 317 F.3d 1228, 1233 (10th Cir. 2003) (officers' "apparent violation of state law" in making an arrest outside their jurisdiction did not amount to a federal violation); Pasiewicz v. Lake County Forest Preserve District, 270 F.3d 520, 526-527 (7th Cir. 2001) (although a "blatant disregard of state law and the chain of command could weigh on the scales of reasonableness," the fact of the officers' extraterritorial arrest in violation of state law did not violate the Fourth Amendment); Abbott v. City of Crocker, 30 F.3d 994, 998 (8th Cir. 1994) (same); Voicenet Communs., Inc. v. Corbett, 2006 U.S. Dist. LEXIS 61916, at *37 (E.D. Pa. Aug. 30, 2006)  (same).

Hence, even if there were a hypothetical state-law provision expressly forbidding police officers to act outside their

---

the party injured in an action at law, suit in equity,  or  other  proper  proceeding  for redress.

42 U.S.C. § 1983.  Thus, to recover under 42 U.S.C. § 1983, a plaintiff must show two elements:  (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Sample v. Diecks, 885 F.2d 1099, 1107 (3d Cir. 1989).

geographic jurisdiction, the police officers action in violation of such provision would not violate the Fourth Amendment, since a violation of state law is not a federal constitutional violation. See, e.g., United States v. Baker, 16 F.3d 854, 856 n.1 (8th Cir. 1994) ("A police violation of state law does not establish a Fourth Amendment violation").

Addressing this particular issue, the Court of Appeals for the Seventh Circuit issued a well-known opinion, Pasiewicz v. Lake County Forest Preserve Dist., 270 F.3d 520.  In Pasiewicz, the plaintiff, arrested within the jurisdiction of the Illinois State forest preserve police forces, filed a § 1983 action alleging that the arresting officers acted without jurisdiction and without a warrant.  The plaintiff's allegations in Pasiewicz were based on the fact that, under the applicable local statute, a state officer's extraterritorial jurisdiction had to be directed by the forest preserve's chief of police or other head.  See id. at 526.

The Seventh Circuit noted that the plaintiff did not implicate a state officer's *ability* to execute an arrest.  Id. at 526 n.3. Rather, the case "concerned the jurisdiction of officers acting between political subdivisions of the same state." Id. at 526. Consequently, the Seventh Circuit dismissed the plaintiff's allegations, reasoning that

> [a] violation of state statute is not [the same as a]
> violation of the federal Constitution.  The federal
> government is not the enforcer of state law.  [Federal
> courts] have applied this principle consistently in the

> context of state laws governing criminal process, and
> [there is] little reason to treat state laws governing
> police jurisdiction differently.  It would not violate
> the Fourth Amendment for the [state] legislature to
> empower preserve officers to make arrests outside the
> district's physical boundaries.  It is difficult to see
> why an officer engaging in the same underlying act
> necessarily would.

Id. (citations omitted); see also Kratzer v. Kufahl, 2002 U.S.
Dist. LEXIS 15631 (D. Kan. June 24, 2002) (noting that, since the
U.S. Constitution did not preclude the state legislature from
empowering county officers to make arrests in neighboring counties
within the state, a state law violation would not support a claim
under § 1983).

Here, the situation is nearly identical to those discussed in
Pasiewicz, Mikulski, Kratzer and their progeny.  Plaintiff's
"extra-territorial jurisdiction" challenge is based on a state
provision analogous to those examined in the aforesaid cases.
Specifically, this New Jersey law reads as follows:

> The members and officers of a police department and
> force, within the territorial limits of the municipality,
> shall have all the powers of peace officers and upon view
> may apprehend and arrest any disorderly person or any
> person committing a breach of the peace.

N.J.S.A. § 40A:14-152.

While addressing the powers of law enforcement officers, the
provision does not contain any language prohibiting extra-
territorial police activity; all the statute seeks to create is a
procedure for police officers to arrest "any disorderly person or
any person committing a breach of the peace," but it does not

create any separate protective interests for the persons committing a breach of the peace. Accord United States v. Jiles, 658 F.2d 194 (3d Cir. 1981) (determining that a similarly worded state provision did not confer a substantive right on the person committing a criminal violation but merely created an administrative plan *helping the state* to regulate the conduct of state officers). Therefore, § 40A:14-152, a state provision containing no express prohibition of extra-territorial police activities, cannot be used as a basis for a Fourth Amendment claim. See State v. Gadsden, 303 N.J. Super. 491, (N.J. App. Div. 1997) (examining, in light of § 40A:14-152, an arrest executed by police outside of their jurisdiction and concluding that the arrest was not a violation of a law of constitutional dimension but a mere procedural violation that did not affect the arrestee's constitutional rights regarding search and seizure); State v. Montalvo, 280 N.J. Super. 377 (N.J. App. Div. 1995) (finding that a police officer acted properly and within his jurisdiction to search defendant's car and, upon fining illegal items in the car, to effect a warrantless arrest in a neighboring township because § 40A:14-152 allowed for officers to arrest for any crimes committed in the officer's presence and committed *anywhere within the limits of the state*).

Therefore, Plaintiff's allegations are without merit and will be dismissed.

## CONCLUSION

Based on the foregoing, the Court will grant Plaintiff's application to file the Complaint without prepayment of the filing fee and will dismiss the Complaint, with prejudice, for failure to state a claim upon which relief may be granted.

An appropriate Order accompanies this Opinion.

_____
**Stanley R. Chesler**
**United States District Judge**

Dated: 4/28/08